# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 16, 2013

## STATE OF TENNESSEE v. SARAH LYNN HANNON

**Appeal from the Criminal Court for Davidson County**
**No. 2012-I-660      Cheryl A. Blackburn, Judge**

---

### No. M2012-02206-CCA-R3-CD - Filed August 28, 2013

---

Appellant, Sarah Lynn Hannon, pleaded guilty to possession with intent to sell or deliver 0.5 grams or more of cocaine in exchange for a sentence of ten years and dismissal of all remaining charges. Per the terms of the plea agreement, the parties left determination of the manner of service of her sentence to the trial court. Following a sentencing hearing, the trial court ordered that appellant serve her ten-year sentence in the Tennessee Department of Correction. It is from this judgment that appellant now appeals. Following our review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ROGER A. PAGE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ, joined.

Ashley Preston, Nashville, Tennessee, for the appellant, Sarah Lynn Hannon.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

Appellant waived the right to be tried upon an indictment or presentment and entered a guilty plea by criminal information on June 29, 2012, to possession with intent to sell or deliver 0.5 grams or more of cocaine. Pursuant to the terms of the plea agreement, the State dismissed the remaining charges of possession with intent to sell or deliver a Schedule II

controlled substance and unlawful use of drug paraphernalia. The factual basis for the plea is set forth in the presentence report[1] as follows:

On [April 19, 2012], at about 9:30 p.m., Hermitage CSU conducted surveillance at the Jack in the Box located at Old Hickory Boulevard and Central Pike. This location is a common location for drug transactions.

At about 9:40 p.m., surveillance detectives observed a female[,] white, later identified as Sarah Hannon [appellant], driving a light blue Mercury into the Jack in the Box parking lot and park away from the business. Surveillance detectives then observed [appellant] take a drink out of a large glass beer bottle and start to count some money. As soon as detectives approached to make contact with [appellant], a male[,] black, later identified as Damaris Somerville, sitting in the back seat behind [appellant], was observed frantically handing [appellant] two baggies with a white substance in them that was believed to be cocaine. [Appellant] took possession of the two baggies of white substance and attempted to shove them down her pants as if she was trying to hide something.

Both subjects, [appellant] and Damaris Somerville, were taken into custody and read Miranda rights. A search of the vehicle yielded two baggies of white substance that field-tested positive for the presence of cocaine. The two baggies['] total weight was 6.4 grams and was found on the driver's seat. A digital scale was located in the vehicle's glove box.

Search incident to arrest of [appellant] found a pill bottle with yellow Opana pills inside. The pill bottle showed that it was filled two days ago ([April 17, 2012]). A cell phone was located [that] contained the text going out stating, "I got Opanas[;] do you want any?" [Appellant] had $132 in her right front pocket that was believed to be drug proceeds and was seized along with the vehicle.

The parties agreed upon a ten-year sentence for the conviction, and appellant agreed to submit to a sentencing hearing for determination of the manner of service of the sentence.

---

[1] A copy of the guilty plea submission hearing is not included in the appellate record. However, we conclude that the record before us is sufficient for meaningful appellate review. *See State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012).

The trial court held a joint sentencing hearing for appellant and her co-defendant, Damarius Somerville, on September 14, 2012. The court first noted that appellant would be sentenced as a Range I standard offender and that the ten-year sentence was to be served concurrently with an eight-year sentence for violation of probation in a 2006 case. The probation violation was based on committing the offenses in the instant case and on appellant's failure to obtain employment.

Mr. Somerville was the first witness at the hearing. He testified that at the time he garnered the instant conviction, he was on probation for selling cocaine. He stated that on April 19, 2012, he and appellant were "strapped" for money. He received a telephone call from a man with whom he was acquainted who said that "he needed something." Mr. Somerville made a call and located what the man needed. He intended to meet the man and "make a little money off [of] the deal."

Mr. Somerville explained that he violated his probation and was incarcerated for a time during January of 2012. As a result of the incarceration, he lost his job. Mr. Somerville used the money that he and appellant had saved to hire a "good" lawyer because his "freedom was important." When he was released, they did not have a place to live, and he did not have a job. Appellant was not able to work because she suffered from back problems. As a result of their financial problems, Mr. Somerville stated, "I got [sic] that phone call, . . . [and] I tried to make a move just to get rent money." He was also financially responsible for their three-year-old son.

Mr. Somerville stated that their financial situation was "very[,] very desperate," which is why he contemplated selling drugs. He acknowledged that "[i]t was a very bad decision at a very desperate time for money." He assured the court that he and appellant would live with appellant's parents, who had custody of their child, and he would find employment if he was released from custody.

On cross-examination, Mr. Somerville admitted that he brought appellant and their son with him to the meeting location, which was a fast food restaurant, but stated that it was so they could get something to eat.

Appellant testified next and stated that she, also, was on probation at the time of her arrest in the instant case. She stated that she was with Mr. Somerville on April 19, 2012, because "[s]ome guy wanted drugs, and we went to go bring them to him." She stated that they engaged in the drug transaction because they "didn't want to be homeless." She expected that within ten days from that date, they would have been forced out of their home.

Appellant stated that she had been a student at Nashville State studying paralegal studies and had attended classes "double full-time." She had been taking seven classes, and she and Mr. Somerville were using her student loans and grants to supplement their income. She planned to resume her education when she was released from custody. Appellant explained that she did not work because she suffered from a fractured vertebrae and a herniated disc. Mr. Somerville was trying to find a second job so that they could save money for her to have back surgery. She also suffered from degenerative disc disease, sciatica, bone spurs in her vertebrae, and bulging discs. The surgery to which she referred was a spinal fusion that was recommended by her neurosurgeon.

Appellant presented the following documentary evidence at the hearing: a certificate of completion from a parenting class; a certificate of completion from a substance abuse and mental health treatment program; a certificate of completion from a parenting program that focused on financial planning; certificates for participation in Bible studies; and sign-in sheets from the chairperson of Narcotics Anonymous and Alcoholics Anonymous. Appellant testified that her faith had grown and that she had learned more about her addiction as a disease. She confirmed that she and Mr. Somerville would live with her parents, who had custody of their son, if she was released from custody.

Appellant's father, Jeff Hannon, testified that appellant and Mr. Somerville could live with him and his wife "on a temporary basis" if they were released from custody. He would expect both of them to obtain employment. Appellant's son lived with them at the time of the hearing. It was sometimes difficult to arrange their schedules so someone could stay with the child, and their finances were strained. Mr. Hannon indicated that additional income would help the situation.

Mr. Hannon stated that appellant had a good attitude about her situation and that she tried to be positive. He confirmed that he and his wife were willing to support their daughter and assist her in meeting any appointments that might be associated with probation or community corrections.

At the close of the evidence, the trial court ruled, with respect to appellant's[2] sentence:

> [Appellant] pled guilty to a ten-year sentence. She's eligible for either Community Corrections or . . . probation. She was also on probation at the time. She testified. She's got one prior felony conviction. That's all the record I see for her. She violated that a couple of times. So[,] there is a prior

[2] The trial court first addressed Mr. Somerville's sentence. However, because he is not a party to this appeal, we will only review the trial court's ruling with regard to appellant's sentence.

-4-

record. She was on probation[;] she violated it. So she does have some enhancing factors. But I have to also determine whether or not this is an appropriate sentence for her. I don't see any mitigation other than neither threatened nor caused serious bodily injury. I do not find this excuse about needing to provide necessities as a very credible excuse. There are lots of people who are unemployed right now. I think the latest thing is eight point something percent. We know that's not even accurate. There's probably a whole lot more people, especially people who do have a felony conviction. That is very tough. But people make it, people do it. They do not have to go out and sell drugs in order to do that. She testifies that this was one time only. Now, I know the Metropolitan Police Department prides themselves on doing the best thing and doing it quickly, but I don't think they always find – the very first time somebody does something, I don't know that they're johnny on the spot and able to do that. But I find her not credible with regard to that issue. So I'm going to place her sentences into effect, the prior sentence. I'm going to deny any alternative sentence. I'm sentencing her to ten years as a Range I standard offender. They'll run concurrent with each other. She will also be getting her jail credit . . . She's also going on to the Department of Correction[]. There is really no basis for which I find that either one of these individuals is going to do anything that I want them to do . . . , and it would be unfair to the other people who come through this court who try and make an effort[,] and they don't go out and start selling drugs.

Appellant now challenges the trial court's ordering her sentence to be served in confinement.


## II. Analysis

### A. Standard of Review

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -210(b) (2010); Tenn. Code Ann. § 40-35-114 (2010 & Supp. 2012). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve

the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4) (2010 & Supp. 2012).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. § 40-35-114 (2010 & Supp. 2012); Tenn. Code Ann. § 40-35-210(c) (2010). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id*. § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, to ensure fair and consistent sentencing." *Id*. § 40-35-210(e). The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The burden of proving applicable mitigating factors rests upon appellant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App. Sept. 18, 1995). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter*, 254 S.W.3d at 345 (citing *State v. Devin Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

A trial court should base its decision regarding alternative sentencing on the following considerations:

(A)    Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)    Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses;

(C)    Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2010).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn.

2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See Carter*, 254 S.W.3d at 346. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2010), Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

With regard to the trial court's discretion to order a suspended sentence, our supreme court has stated:

> Pursuant to the 2005 revisions, the Sentencing Act now provides that "[a] defendant shall be eligible for probation under the provisions of this chapter, if the sentence actually imposed upon the defendant is ten (10) years or less." Tenn. Code Ann. § 40-35-303(a) (2006). No longer is any defendant entitled to a presumption that he or she is a favorable candidate for probation, however. The 2005 amendments revised section -102(6) such that it now provides: "A defendant who does not fall within the parameters of subdivision (5), and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. A court shall consider, but is not bound by, this advisory sentencing guideline." *Id*. § 40-35-102(6).

*Carter*, 245 S.W.3d at 347 (footnote omitted). Because appellant's sentence was ten years, she is eligible for probation; however, she does not qualify for "favorable candidate" status because she stands convicted of a Class B felony. "'[T]he burden of establishing suitability for probation rests with the defendant.'" *Id.* (quoting Tenn. Code Ann. § 40-35-303(b) (2006)). Appellant shoulders the burden of demonstrating that the suspended sentence will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *Id.* (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).

Our supreme court has held that

[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]. . . . [W]hile "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority," there is no requirement that such reasoning be particularly lengthy or detailed." *Rita v. United States*, 551 U.S. 338, 356-57 (2007). Accordingly, . . . sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed.

*Bise*, 380 S.W.3d at 705-06 (emphasis added).

In denying appellant's request for a suspended sentence, the trial court considered the testimony of appellant and her co-defendant as to their selling drugs to provide for basic living expenses but rejected it. It reviewed the presentence report and noted appellant's prior felony conviction. It also discussed the circumstances of the offense. The trial court further found that appellant's being on probation at the time of the offense was an enhancing factor and that the offense neither threatened nor caused serious bodily injury was a mitigating factor. It also relied on appellant's failure to comply with the terms of probation on two previous occasions. We note that the record on appeal does not contain a sentencing order. Although the better practice is for the trial court to fully articulate that it has considered the appropriate statutory factors and make specific findings, in the instant case, the trial court made appropriate findings in support of the denial of probation.

Appellant argues that the trial court failed to state whether measures less restrictive than incarceration have been applied unsuccessfully. The record belies this argument, as the trial court noted appellant's two failed attempts to succeed at probation. Although appellant submits that the trial court failed to state whether it considered factors such as appellant's mental condition, background, and social history, we find these "arguments . . . unavailing, as accepting them would require this court to engage in the kind of micro-management of the trial court's sentencing decisions that is plainly no longer permissible under *Bise* and *Caudle*—if indeed it ever was." *State v. Jerry Kirkpatrick*, No. E2011-01091-CCA-R3-CD, 2013 WL 105896, at *11 (Tenn. Crim. App. Jan. 9, 2013). Appellant has failed to carry her burden of demonstrating to the trial court or this court that granting her probation would serve the ends of justice and serve the best interests of both the public and her.

**CONCLUSION**

Based on our review of the record, the parties' briefs, and the applicable case law, we affirm the trial court's denial of alternative sentencing.


_____
ROGER A. PAGE, JUDGE